## No. 25-20309

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

# Claudia Valadez,

*Plaintiff - Appellant*

*v.*

# City of Jacinto City, TX;
# Jose Juarez-Aguilera; J.M. Ayala,

*Defendants - Appellees*

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division (USDC No. 4:24-CV-02950)

# Plaintiff-Appellant's Brief

Matthew S. Manning
*Webb, Cason & Manning, P.C.*
TX Bar No. 24075847
710 Mesquite Street
Corpus Christi, Texas 78401
Phone: (361) 887-0903
service@wcctxlaw.com

*Attorneys for Plaintiff-Appellant*

Kirk Michael Cooper
*Cooper Appeals, P.L.L.C.*
TX Bar No. 24087343
10420 Montwood Drive, Ste. N-405
El Paso, Texas 79935
Phone: (915) 289-8282
kirk@cooperappeals.com

Submitted: November 7, 2025

## CERTIFICATE OF INTERESTED PERSONS

————

### *Valadez v. City of Jacinto et al.*, No. 24-40155

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division (USDC No. 4:24-CV-02950)

————

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff-Appellant: | Attorneys for Plaintiff-Appellant: |
|---|---|
| Claudia Valadez | Matthew Steven Manning<br>Webb, Cason & Manning, P.C.<br>710 Mesquite Street<br>Corpus Christi, TX 78401<br>361-887-1031<br>Fax: 361-887-0903<br>Email: service@wcctxlaw.com<br>Trial and Appellate Counsel<br><br>Kirk Michael Cooper<br>Cooper Appeals, P.L.L.C.<br>10420 Montwood Drive, Ste. N-405<br>El Paso, Texas 79935<br>Appellate Counsel |

| Defendants-Appellees: | Attorneys for Defendants-Appellees: |
|---|---|
| City of Jacinto City, TX | William S. Helfand |
| | Lewis, Brisbois, Bisgaard & Smith, L.L.P. |
| | Suite 1400 |
| Jose Juarez-Aguilera | 24 Greenway Plaza |
| | Wesleyan Tower |
| | Houston, TX 77046 |
| J.M. Ayala | Phone: 832-460-4614 |
| | Email: bill.helfand@lewisbrisbois.com |
| | Fax: 713-759-6830 |
| | |
| | Adarsh Annamaneni |
| | Lewis, Brisbois, Bisgaard & Smith, L.L.P. |
| | Suite 1400 |
| | 24 Greenway Plaza |
| | Wesleyan Tower |
| | Houston, TX 77046 |
| | Direct: 832-460-4618 |
| | Email: |
| | adarsh.annamaneni@lewisbrisbois.com |

/s/ Kirk Cooper
Kirk Cooper

## REQUEST FOR ORAL ARGUMENT

Appellant Claudia Valadez requests oral argument. Valadez has filed this appeal of her case—in which she was injured as a vehicular bystander by a suspect being chased at high speeds by the City of Jacinto, Texas police department—in part to accept this Court's invitation to argue for formalized recognition of the semi-acknowledged state-created danger doctrine. *See Fisher v. Moore,* 73 F.4th 367, 373-74 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 569, 217 L. Ed. 2d 303 (2024) (Willett, J., majority op.) (holding that this Court has "not categorically ruled out" adopting the state-created danger doctrine but requesting future briefing on whether the doctrine comports with historical understanding of the Constitution); *id.* at 376 (Higginson and Douglas, JJ., joined by Stewart, Elrod, Haynes, and Graves, JJ., dissenting from denial of rehearing en banc) ("Litigants should continue asking this court to decide the state-created danger issue" as "a future panel could assume this responsibility" and stop "perpetuat[ing] uncertainty" and "blocking percolation[.]"). Valadez also advances arguments concerning the continued viability of the qualified immunity doctrine based on additional scholarship concerning a codification error involving Section 1983's Notwithstanding Clause that are worthy of discussion. Oral argument would also be helpful to assist the Court in deciding an unsettled issue of Texas Tort Claims Act law surrounding police chases.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** ............................ ii

**REQUEST FOR ORAL ARGUMENT** .................................... iv

**TABLE OF CONTENTS** ............................................. v

**TABLE OF AUTHORITIES** ........................................ viii

**JURISDICTIONAL STATEMENT** ................................... xiv

**ISSUES PRESENTED** ............................................. xv

**INTRODUCTION** .................................................. 1

**STATEMENT OF THE CASE** ......................................... 4

**A. Factual History** ............................................ 4

**B. Procedural History** ........................................ 18

   1. Complaint ................................................ 18

   2. Motion to dismiss ........................................ 18

   3. District court decision .................................. 21

**SUMMARY OF THE ARGUMENT** ...................................... 22

**ARGUMENT** ..................................................... 24

**A.  Standard of review**                                                24

**B.  The originally enacted text of Section 1983 precludes the defense of qualified immunity.**                                                25

**C.  ISSUE ONE: The district court erred by dismissing Valadez's Fourteenth Amendment state-created danger doctrine claim (Count I) under Rule 12(b)(6).**                                                30

  1.  Valadez's pleadings meet the elements for state-created danger recognized in Fisher v. Moore.                                                31

  2.  The state-created danger doctrine is clearly established.                                                37

    a.  A robust consensus of authority from other circuits shows the state-created danger doctrine is clearly established.                                                37

    b.  The state-created danger doctrine comports with how the Fourteenth Amendment's reach was historically understood.                                                39

**D.  ISSUE TWO: The district court erred by dismissing Valadez's Fourteenth Amendment substantive due process claim (Count II) under Rule 12(b)(6).**  42

**E.  ISSUE THREE: The district court erred by dismissing Valadez's *Monell* claims for injury-from-policy (Count III) and failure to train/supervise (Count IV) under Rule 12(b)(6).**                                                46

  1.  Injury from policy claim                                                46

  2.  Failure to train/supervise claim                                                49

**F.  ISSUE FOUR: The trial court erred by dismissing Valadez's Texas Tort Claims Act claim  (Count V) under Rule 12(b)(6).**                                                52

1.   Valadez adequately pleaded actual notice.                    52

2.   Valadez's theory of bystander injury is cognizable under the TTCA's motor vehicle waiver.                    55

**CONCLUSION**                                                    61

**CERTIFICATE OF SERVICE**                                       62

**CERTIFICATE OF COMPLIANCE**                                    63

**RECORD EXCERPTS (SEPARATELY BOUND)**

# Table of Authorities

## Constitutional Provisions

U.S. Const. amend. XIV ................................................................ 30

## Federal Cases

*Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021)................................ 47

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020) .............................................. 25

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ........................................................ 37

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996)...................................................... 4

*Balle v. Nueces Cty.*, 952 F.3d 552 (5th Cir. 2017) ............................................. 25

*Breen v. Tex. A&M Univ.*, 485 F.3d 325 (5th Cir.), *op. withdrawn in part on reh'g*, 494 F.3d 516 (5th Cir. 2007) ........................................................................ 31

*Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001).............................. 38

*Carlton v. Cleburne Cnty.*, 93 F.3d 505 (8th Cir. 1996) ....................................... 38

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ................................. 43, 44, 45

*Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003)................................................... 50

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)................ 30

*Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849 (5th Cir. 2012) ...................................................................................2, 31, 32

*Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015)........................................................ 38

*Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226 (5th Cir. 2025) .............. 43

*Est. of Soakai v. Abdelaziz*, 137 F.4th 969 (9th Cir. 2025) ................................... 42

*Fisher v. Moore*, 73 F.4th 367 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 569, 217 L. Ed. 2d 303 (2024).................................................................................passim

*Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941 (N.D. Tex. 2014).................. 47

*Green v. Thomas*, 129 F.4th 877 (5th Cir. 2025)................................................ 3, 27

*Haddock v. Tarrant Cnty., Tex.*, 852 F. App'x 826 (5th Cir. 2021)........................ 46

*Hall v. Hodgkins*, 305 F. App'x 224 (5th Cir. 2008) ............................................ 1

*Hankins v. Wheeler*, 109 F.4th 839 (5th Cir. 2024) ............................. 3, 25, 26, 27

*Horvath v. City of Leander*, 946 F.3d 787 (5th Cir. 2020) (Ho, J., concurring)....... 27

*In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787 (5th Cir. 2021) .......................... 29

*In re Gold King Mine Release in San Juan Cnty., Colorado, on Aug. 5, 2015*, 669 F. Supp. 3d 1146 (D.N.M. 2023)................................................................... 28

*Irish v. Fowler*, 979 F.3d 65 (1st Cir. 2020) ................................................passim

*Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759 (5th Cir. 2019).............57

*Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198 (5th Cir. 1994) ....................... 2, 32

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998)...............................38

*Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006)..................................40

*King ex rel. King v. E. St. Louis Sch. Dist.*, 496 F.3d 812 (7th Cir. 2007) ...............38

*Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996)......................................................38

*McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308 (5th Cir. 2002) .......................30

*Mitchell v. Duval Cnty. Sch. Bd.*, 107 F.3d 837 (11th Cir. 1997) ...........................39

*Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978) ......... 18, 42, 46

*Morin v. Caire*, 77 F.3d 116 (5th Cir. 1996) ......................................................24

*O'Neal v. Cazes*, 257 F. App'x 710 (5th Cir. 2007) ..............................................43

*Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415 (2d Cir. 2009) ......38

*Peña v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) ..............................46

*Printz v. U.S.*, 521 U.S. 898 (1997) ......................................................... 40, 41

*Rogers v. Jarrett*, 64 F.4th 971 (5th Cir. 2023) (Willett, J., concurring) .......3, 25, 27

*Sauers v. Borough of Nesquehoning*, 905 F.3d 711 (3d Cir. 2018) ....................passim

*Scanlan v. Tex. A&M Univ.*, 343 F.3d 533 (5th Cir. 2003) ..................................... 31

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc) ............................passim

*Stephan v. United States*, 319 U.S. 423 (1943) (per curiam) ................................. 28

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) .............................................. 24

*Uhlrig v. Harder*, 64 F.3d 567 (10th Cir. 1995) .................................................... 38

*Velasquez v. City of Wilkes-Barre*, No. 3:22CV125, 2024 WL 1333378 (M.D. Pa. Mar. 28, 2024) ..........................................................................................passim

*Wernecke v. Garcia*, 591 F.3d 386 (5th Cir. 2009) ............................................... 50

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) ................................................... 33

*Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) ................................................ 38

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) (Thomas, J., concurring) ......................... 27

**State Cases**

*City of El Paso v. Cangialosi*, 632 S.W.3d 611 (Tex.App.—El Paso 2020, no pet.) ..................................................................................................................passim

*City of San Antonio v. Maspero*, 640 S.W.3d 523 (Tex. 2022) ....................3, 58, 61

*City of San Antonio v. Tenorio*, 543 S.W.3d 772 (Tex. 2018) .......................... 53, 54

*Gonzales v. City of Camden*, 357 N.J. Super. 339, 347, 815 A.2d 489, 493 (N.J. App. Div. 2003)................................................................................................... 41

*Maspero v. City of San Antonio*, 628 S.W.3d 476 (Tex.App.—San Antonio 2019), *rev'd on other grounds,* 640 S.W.3d 523, 525 (Tex. 2022) ................................. 58

*PHI, Inc. v. Tex. Juv. Just. Dept*, 593 S.W.3d 296 (Tex. 2019) ............................ 60

*Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380 (Tex. 2016) ......................... 56

*Tex. Dep't of Pub. Safety v. Reyes*, No. 08-25-00048-CV, 2025 WL 2655982 (Tex.App.—El Paso Sept. 16, 2025, no pet.) (mem. op.) ........................... 3, 58

**Federal Statutes**

1 U.S.C. § 112.................................................................................................28

1 U.S.C. § 204(a) ..........................................................................................28

28 U.S.C. § 1291................................................................................................ x

28 U.S.C. § 1367(a) ........................................................................................ x

42 U.S.C. § 1983..................................................................................passim

**State Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 101.021................................ 55, 56

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A) ....................... 57, 60

TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a) ................................. 53

TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c) ................................. 53

**Other Authorities**

Alexander Reinert, *Qualified Immunity's Flawed Foundation*, 111 CALIF. L. REV.
    201 (2023) ................................................................................. 25, 26

Charles S. Zinn, *Revision of the United States Code*, 51 LAW LIBR. J. 388 (1958). 28

David Pruessner, *The Forgotten Foundation of State-Created Danger Claims*, 20 REV.
    LITIG. 357 (2001) ......................................................................... 40, 41

*Jacinto City, Texas,* WIKIPEDIA,
    https://en.wikipedia.org/wiki/Jacinto_City,_Texas (last visited November 7,
    2025) ........................................................................................... 1

Patrick Jaicomo & Daniel Nelson, *Section 1983 (Still) Displaces Qualified Immunity
    (Feb. 3, 2025)*, 49 HARV. J.L. & PUB. POL'Y (forthcoming in 2026)............ 28

Tobias A. Dorsey, *Some Reflections on Not Reading the Statutes*, 10 GREEN BAG 2d
    283 (2007) ................................................................................... 28

## Jurisdictional Statement

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because a timely appeal was filed from a final judgment of a district court issued June 27, 2025. ROA.195 (final judgment), ROA.196 (notice of appeal). The district court had jurisdiction over claims for constitutional right violations under 42 U.S.C. § 1983. The district court had supplemental jurisdiction over the state law tort claim under 28 U.S.C. § 1367(a).

# Issues Presented

**Issue One:** *Fourteenth Amendment claim—state-created danger doctrine.* The district court erred by dismissing Valadez's Fourteenth Amendment claim under the state-created danger doctrine (Count I) under Rule 12(b)(6).

**Issue Two:** *Fourteenth Amendment claim—substantive due process.* The district court erred by dismissing Valadez's Fourteenth Amendment claim for violation of substantive due process (Count II) under Rule 12(b)(6).

**Issue Three:** Monell *claims—police pursuit policy and failure to train/supervise.* The district court erred by dismissing Valadez's *Monell* claims for injury-from-policy (Count III) and failure to train/supervise (Count IV) under Rule 12(b)(6).

**Issue Four:** *Texas Tort Claims Act.* The district court erred by dismissing Valadez's Texas Tort Claims Act claim (Count V) under Rule 12(b)(6).

## Introduction

This case involves severe injury to an innocent bystander resulting from of a high-speed police chase through Jacinto City, a small Texas municipality that has a total area of 1.85 square miles and is surrounded entirely by the neighboring cities of Houston and Galena Park.[1] On August 10, 2022, Claudia Valadez was struck by a car that was fleeing Jacinto City Police Department officer Sgt. Jose Juarez-Aguilera.[2] Rather than radioing colleagues in the next city over to surveil and stop a suspicious vehicle, Sgt. Juarez-Aguilera chased a fleeing GMC truck filled with juveniles through a densely-packed residential neighborhood with a 10-mile-an-hour speed limit, then out onto a thoroughfare, where the truck ran a red light and collided with Valadez's vehicle. The impact of the collision was so great it physically forced Valadez from the driver's seat into the passenger's seat of her own car, where she was removed by first responders.

Other courts readily recognize that these kind of allegations state Section 1983 claims under the state-created danger doctrine and under substantive due process

---

[1] In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008); *see also* 2019 U.S. Census Bureau Statistics referenced at *Jacinto City, Texas,* Wikipedia, https://en.wikipedia.org/wiki/Jacinto_City,_Texas (last visited November 7, 2025).

[2] ROA.8 ¶ 13.

principles.[3] However, this Court remains agnostic about the existence of the state-created danger doctrine[4] despite having identified, articulated, and applied the doctrine's elements when affirming Rule 12(b)(6) dismissals since 1994.[5]

This Court has also acknowledged that a critical mass of sister circuits (if not virtually all of them) have recognized the existence of the state-created danger doctrine, and that the U.S. Supreme Court has said that a law can be clearly established for purposes of qualified immunity even if the circuit itself does not recognize the law where there is "robust consensus" nationwide. Still, the Court states that the robust consensus is still insufficient to clearly establish the law until the Court finally decides for itself en banc.[6] Finally, the Court has recognized that the concept of qualified immunity itself which sets out the "clearly established law" test may be based on a codification error in Section 1983, and that the actual enacted statute precludes immunity altogether. However, the Court holds that it cannot

---

[3] *See, e.g., Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 718 (3d Cir. 2018); *Velasquez v. City of Wilkes-Barre*, No. 3:22CV125, 2024 WL 1333378, at *5 (M.D. Pa. Mar. 28, 2024).

[4] *See Fisher v. Moore,* 73 F.4th 367, 373-74 (5th Cir. 2023).

[5] *See, e.g., Fisher*, 73 F.4th at 372; *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012); *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994).

[6] *Fisher*, 73 F.4th at 372.

formally interpret the actual enacted law because the Court is "middle-management" that must wait to follow the U.S. Supreme Court's lead first.[7]

Because, on the federal side, these constitutional issues remain unanswered—yet also answered consistently across opinions—and because, on the state side, the Texas Supreme Court has not yet decided whether people like Valadez can bring suit under the Texas Tort Claims Act[8] even though the state's intermediate courts have arrived at inconsistent results,[9] Valadez must litigate in limbo. And in part because of the uncertainty surrounding all these issues, the district court dismissed Valadez's claims against the individual defendants for failure to state a constitutional claim, and against the City derivatively.

Valadez brings this appeal seeking both clarity in the law, as well as her day in court. For the following reasons, this Court should reverse and reinstate Valadez's claims.

---

[7] *Green v. Thomas*, 129 F.4th 877, 890 (5th Cir. 2025); *see also Hankins v. Wheeler*, 109 F.4th 839, 845 (5th Cir. 2024); *Rogers v. Jarrett*, 64 F.4th 971, 980 (5th Cir. 2023) (Willett, J., concurring).

[8] *See City of San Antonio v. Maspero*, 640 S.W.3d 523, 525 (Tex. 2022).

[9] *Tex. Dep't of Pub. Safety v. Reyes*, No. 08-25-00048-CV, 2025 WL 2655982, at *3 (Tex.App.—El Paso Sept. 16, 2025, no pet.) (mem. op.) (recognizing split).

## STATEMENT OF THE CASE

In assessing pleading sufficiency under Rule 12(b)(6), all allegations must be accepted as true and all inferences must be drawn in the light most favorable to Valadez, the non-movant. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The facts alleged by Valadez are as follows.

### A. Factual History

At approximately 3:20 am on the morning of August 10, 2022, Jacinto City Police Sgt. Jose Juarez-Aguilera was on patrol near the Cinemark Tinseltown Jacinto City, located at 11450 East Freeway, Houston, TX 77029.[10] While on patrol, Sgt. Juarez-Aguilera assisted a Galena Park Police Department officer with a call involving a stolen vehicle evading arrest.[11] The Galena Park officer advised Sgt. Juarez-Aguilera that there was another vehicle associated with a suspect previously apprehended for evading arrest.[12]

While traveling down Charlie Oates Road, Defendant Juarez-Aguilera came to a stop at the corner of Charlie Oates Road and Market Road.[13] As he approached that

---

[10] ROA.8 ¶ 14.
[11] ROA.8 ¶ 15.
[12] ROA.8 ¶ 16.
[13] ROA.8 ¶ 17.

intersection, his attention was drawn to a gray 2002 GMC Sierra pickup bearing a temporary tag.[14]

As the vehicle passed in front of him, Sgt. Juarez-Aguilera activated his emergency lights to affect a traffic stop on the vehicle.[15] At the time Sgt. Juarez-Aguilera initiated the vehicle pursuit to follow, the suspect vehicle did not present a clear and immediate threat to the safety of others.[16]

The vehicle then turned left onto the 1300 block of Jennifer Lane, as Sgt. Juarez-Aguilera continue to give chase.[17] With its turn onto Jennifer Lane, the suspect vehicle entered a heavily-populated residential neighborhood, as evidenced by vehicles lining the streets and driveways as the two vehicles sped through.[18] The complaint contains dashcam stills depicting the narrow streets in this neighborhood, which are reproduced in this brief below along with the allegations to which they are matched. A map of the residential area appeared in the Original Complaint at Paragraph 21 as Illustration C:

---

[14] ROA.8 ¶ 17.
[15] ROA.9 ¶ 19.
[16] ROA.8 ¶ 18.
[17] ROA.9 ¶ 20.
[18] ROA.10 ¶ 21.



Upon entering the heavily-populated neighborhood, the suspect vehicle took a quick right turn, turning onto Horatio Street and gaining speed.[19]

---

[19] ROA.10 ¶ 22 & Illustration D.



(ILLUSTRATION D)

After turning onto Horatio Street, the suspect vehicle—being hotly pursued by Sgt. Juarez-Aguilera in his police vehicle—passed a sign advising, "Road Humps: 10 MPH," a clear sign that this was a low-speed area.[20] Below is Illustration E from the original complaint, which is a screenshot from the dashcam video depicting the nature of the residential neighborhood as well as the signs setting the speed limit for the neighborhood.[21]

---

[20] ROA.11 ¶ 23.
[21] ROA.11¶ 23 (Illustration E).



(ILLUSTRATION E)

Just a little further down the road, the suspect vehicle hit the road humps hard

enough to get airborne.[22] Both the suspect vehicle and Sgt. Juarez-Aguilera's police

vehicle were traveling well in excess of the speed limit at this time.[23]

---

[22] ROA.11 ¶ 24.
[23] ROA.11 ¶ 24.



(ILLUSTRATION G)

As the two vehicles traveled down the residential Horatio Street—lined with vehicles and homes—the suspect vehicle continued pulling away from Sgt. Juarez-Aguilera, flying over another speed bump.[24]

---

[24] ROA.12 ¶ 25 & Illustration G.



(ILLUSTRATION H)

The suspect vehicle continued gaining speed as it traveled down the road and approached the stop sign at the intersection of Horatio Street and Munn Street.[25] This intersection was essentially a "T," with Horatio Street ending as it meets Munn Street. Continuing to travel at a reckless speed, the suspect vehicle barreled through the stop sign at the intersection of Horatio Street and Munn Street.[26] In hot pursuit, Sgt. Juarez-Aguilera traveled through the stop sign at this intersection as well.[27] The two vehicles then crossed back over Jennifer Street. As they did, the suspect vehicle

---

[25] ROA.12 ¶ 26.
[26] ROA.12-13 ¶ 26.
[27] ROA.13 ¶ 27.

continued pulling further away from Sgt. Juarez-Aguilera.[28] Continuing to increase their speed, the vehicles then approached the intersection of Munn Street and Belin Street, again flying through the stop sign at the intersection, after passing a Neighborhood Watch sign.[29]

Traveling further, the suspect vehicle came to the intersection of Munn Street and Serpentine Street.[30] While not controlled by a stop sign or other traffic-control device, there was a "Road Humps: 10 MPH" sign on the corner, again admonishing drivers to travel over the speed bumps at a slow rate of speed.[31]



(ILLUSTRATION K)

---

[28] ROA.13 ¶ 28.
[29] ROA.13 ¶ 29.
[30] ROA.14 ¶ 30.
[31] ROA.14 ¶ 30 & Illustration K.

After turning onto Serpentine Street, the suspect vehicle continued forward, greatly increasing its distance from Sgt. Juarez-Aguilera's police vehicle.[32] Traveling around Serpentine Street at a high rate of speed, the suspect vehicle did not stop at the stop sign at Serpentine and Belin Street; instead, the suspect vehicle sped on to Market Street.[33] Coming to the intersection at Serpentine and Market, the suspect vehicle sped over the railroad tracks, through the stop sign, and down Market Street.[34]



(ILLUSTRATION N)

---

[32] ROA.14 ¶ 31.
[33] ROA.15 ¶ 32.
[34] ROA.15 ¶ 33 & Illustration N.

Plaintiff-Appellant's Brief
*Valadez v. City of Jacinto City et al.*, No. 25-20309                                    12

After speeding down Market Street a significant distance, the suspect vehicle approached the major intersection of Market Street and Federal Road. The traffic light facing the suspect vehicle as it approached was red, indicating any vehicle traveling in the same direction as the suspect vehicle was required to stop.[35] As the suspect vehicle and Sgt. Juarez-Aguilera approached Federal Road, a Ford Explorer driven by Plaintiff Valadez was visible off to the left. The traffic light facing Valadez was green, indicating she had the right-of-way.[36]



(ILLUSTRATION P)

---

[35] ROA.16 ¶ 35.
[36] ROA.16 ¶ 36 & Illustration P.

The suspect vehicle drove through the red light at a high rate of speed, causing Valadez's Ford Explorer and the suspect vehicle to collide.[37] Both the suspect vehicle and Valadez's vehicle came to rest in front of the Federal Market grocery store, located at 1303 Federal Road.[38] Four juveniles operating the suspect vehicle were taken into custody.[39]



(ILLUSTRATION Q)

---

[37] ROA.17 ¶ 37 & Illustration Q.
[38] ROA.17 ¶ 38 and Illustration R.
[39] ROA.17 ¶ 38.



(ILLUSTRATION R)

Sgt. Juarez-Aguilera then observed Valadez slumped over into the passenger seat of the Ford Explorer she was driving.[40] Sgt. Juarez-Aguilera and Houston Police Department officers were able to get into Valadez's vehicle to assist her after tow truck drivers on scene assisted in opening the passenger door of Valadez's car.[41] Thereafter, Valadez was transported from the scene by Houston Fire/EMS to Ben Taub Hospital.[42]

---

[40] ROA.18 ¶ 39.
[41] ROA.18 ¶ 39.
[42] ROA.18 ¶ 40 & Illustration S.



(ILLUSTRATION S)

The Houston Police Department investigated the accident and assigned the incident a case number.[43] The Harris County District Attorney's Office agreed to accept at least felony evading arrest charges.[44] Later that morning, Sgt. Juarez-Aguilera learned that Valadez was in critical condition in the Intensive Care Unit due to her injuries. Sgt. Juarez-Aguilera conferred with Valadez's doctor to be updated on her medical condition, which was still critical at the time.[45] Only after returning to the Jacinto City Police Department later that morning did Sgt. Juarez-Aguilera

---

[43] ROA.18 ¶ 41.
[44] ROA.18 ¶ 41.
[45] ROA.18 ¶ 42.

learn that the suspect vehicle had been reported stolen in the nearby city of Galena Park.[46]

Valadez suffered incredibly severe injuries to her body due to this collision, as well as the destruction of the vehicle she was operating at the time the suspect vehicle ran the red light.[47] Valadez was operating her motor vehicle in a reasonable and prudent manner, exercising ordinary care for her safety and the safety of others.[48] The following images, listed as Illustrations T-V in the Original Complaint, depict the condition of her vehicle after the crash.



---

[46] ROA.18 ¶ 43.
[47] ROA.19 ¶ 44.
[48] ROA.19 ¶ 45.

## B. Procedural History

### 1. *Complaint*

Valadez filed suit against the City of Jacinto, Jacinto City Police Chief J.M. Ayala, and Sgt. Jose Juarez-Aguilera.[49] Valadez raised five counts of claims: (1) a 42 U.S.C. § 1983 claim for injuries under the state-created danger doctrine;[50] (2) a § 1983 claim for violation of Valadez's substantive due process rights;[51] (3) a *Monell* claim[52] against Jacinto City for enacting an unconstitutional policy that was the moving force behind her injuries;[53] (4) negligent hiring, supervision, training, and retention;[54] and (5) an injury claim under the Texas Tort Claims Act's motor vehicle exception.[55] Valadez also pleaded that qualified immunity did not apply.[56]

### 2. *Motion to dismiss*

Defendants moved to dismiss under FED. R. CIV. P. 12(b)(6), raising the following arguments:

---

[49] ROA.6-7.
[50] ROA.20-21 ¶¶ 46-58.
[51] ROA.21-22 ¶¶ 59-66.
[52] *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 692 (1978).
[53] ROA.22-24 ¶¶ 67-80.
[54] ROA.24-25 ¶¶ 81-88.
[55] ROA.25-28 ¶¶ 89-106.
[56] ROA.29-30 ¶¶ 107-13.

- As to Count I, Defendants argued that there is no state-created danger theory of § 1983 liability in the Fifth Circuit and that the state-created danger theory was not clearly established law.[57]

- As to Count II, Sgt. Juarez-Aguilera argued that Valadez had not alleged that Officer Juarez-Aguilera acted with deliberate indifference necessary for a Fourteenth Amendment deprivation of life claim.[58]

- As to Count III, Defendant City of Jacinto argued that it could not be held liable under a *Monell* theory because (1) Valadez failed to state a claim for a constitutional violation, (2) Valadez did not identify any city policy adopted by the City's policymaker, and (3) Valadez did not allege that the policy was the moving force behind her injuries.[59]

- As to Count IV, Defendant Chief Ayala argued that he could not be held liable under § 1983 because (1) Valadez did not sufficiently plead a constitutional violation, (2) Chief Ayala could not be held vicariously liable for the actions of subordinates.[60]

---

[57] ROA.85-86.
[58] ROA.86-88.
[59] ROA.89-92.
[60] ROA.88.

PLAINTIFF-APPELLANT'S BRIEF
*Valadez v. City of Jacinto City et al.*, No. 25-20309

The Individual Defendants also argued that they were shielded by qualified immunity.[61]

As for the common law claims under the Texas Tort Claims Act, Defendants alleged (1) Valadez did not present the City with a timely and adequate notice of the claim, (2) Valadez did not adequately plead actual notice, (3) Valadez did not adequately plead a TTCA motor vehicle exception waiver because Valadez could not show a causal nexus because she was injured by the vehicle being pursued and not the vehicle being driven by the police.[62]

Valadez filed a response in opposition, arguing among other things that (1) the Fifth Circuit had implicitly recognized the state-created danger doctrine by articulating elements in *Fisher v. Moore*[63] and that she alleged facts sufficient to meet those elements;[64] (2) qualified immunity did not apply due to the recently-identified codification error in Section 1983, but even if it did, the state-created danger doctrine was clearly established by a robust consensus of authority from other circuits;[65] (3) the substantive due process claim was viable because the circumstances of the police chase met the "shocks the conscience" standard;[66] (4) the two *Monell* claims were

---

[61] ROA.94-96.
[62] ROA.96-101.
[63] *Fisher v. Moore*, 73 F.4th 367, 372 (5th Cir. 2023).
[64] ROA.154-56.
[65] ROA.157-58.
[66] ROA.159-60.

adequately pleaded;[67] and (5) Valadez adequately alleged actual notice and the motor vehicle waiver under the Texas Tort Claims Act.[68]

### 3. District court decision

The district court granted Defendant's Rule 12(b)(6) motion.[69] The district court dismissed Valadez's state-created danger doctrine claim by finding that the Fifth Circuit had not recognized that type of claim.[70] The district court also held that Valadez had not pleaded an adequate substantive due process claim.[71] The district court then dismissed the *Monell* claims against the City and Chief Ayala because it held there was no underlying constitutional violation.[72] Finally, the district court found that Valadez's Texas Tort Claims Act action against the City should be dismissed because, according to the district court, the motor vehicle waiver of the TTCA required a pleading that a police officer's car had hit Valadez directly, and since she was hit by a car that was being pursued by police, her TTCA claim was not viable.[73] The district court denied leave to amend.[74]

This appeal followed.[75]

---

[67] ROA.161-64.
[68] ROA.165-66.
[69] ROA.190-99.
[70] ROA.194.
[71] ROA.195.
[72] ROA.196-97.
[73] ROA.197-98.
[74] ROA.198-99.
[75] ROA.201.

## Summary of the Argument

The district court erred by dismissing Valadez's claims.

*State-created danger doctrine.* Valadez's state-created danger claim against Sgt. Juarez-Aguilera should be reinstated. Contrary to the district court's decision, this Court has not foreclosed the applicability of the state-created danger doctrine, and it has recognized and articulated elements of the state-created danger doctrine several times. Valadez's claims meet the recognized elements of this claim: (1) Sgt. Juarez-Aguilera used his authority to create a dangerous environment for the plaintiff by engaging in a high-speed chase in a residential area and (2) a reasonable juror could infer deliberate indifference, i.e. that Sgt. Juarez-Aguilera knew of and disregarded an excessive risk to the victim's health or safety.

The Court should not grant qualified immunity on clear establishment grounds because, as the Court has recognized, qualified immunity is predicated on a codification error in Section 1983, and the actual enacted statutory text precludes immunity under the circumstances. Even if qualified immunity remains viable, the state-created danger doctrine is clearly established by the robust consensus of the federal circuit courts, and the state-created danger doctrine is consistent with the historical understanding of the Fourteenth Amendment's aims.

*Substantive due process violation.* Valadez's substantive due process claim should be reinstated. The U.S. Supreme Court's decision in *County of Sacramento v. Lewis* set a "shocks the conscience" standard for this class of claims, but it also stated that conscience-shocking behavior can include conduct that is "more than negligence but less than intentional conduct, such as recklessness or gross negligence" depending on the factual circumstances. The Third Circuit has taken a graduated approach involving police chases that this Court should adopt. Under that approach, the circumstances of this police chase rise to the level of shocking the conscience.

Monell *claims.* Valadez's injury-from-policy and failure to train *Monell* claims should be reinstated. Valadez sufficiently alleged the existence of policies, the failure to adequately train officers, and that these failures were the moving force behind her injury.

*Texas Tort Claims Act.* Valadez's TTCA state law claim should be reinstated. Valadez adequately pleaded a claim that falls within the TTCA's motor vehicle waiver. Defendants-Appellees assertion that a third-party bystander claim is only cognizable under the TTCA if the officer actually strikes the bystander with his vehicle during a police chase is inconsistent with Texas law, and at least one Texas

appellate court has held that these types of chases fall within the ambit of the motor vehicle waiver.

ARGUMENT

## A. Standard of review

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(1)(2). Pleading allegations "must be simple, concise, and direct. No technical form is required." FED. R. CIV. P. 8(d)(1). "Pleadings must be construed so as to do justice." FED. R. CIV. P. 8(e).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (internal citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims" and pass through to the next litigation phase of discovery. *Id.*

A district court's ruling on a Rule 12(b)(6) motion to dismiss is subject to de novo review. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). "The motion may be granted only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* "At the 12(b)(6) stage of

litigation, it is inappropriate for a district court to weigh the strength of the allegations." *Arnold v. Williams*, 979 F.3d 262, 268 (5th Cir. 2020). "[W]hen a complaint contains sufficient *factual* allegations, a court should not grant a motion to dismiss for imperfect statement of the legal theory supporting the claim asserted." *Balle v. Nueces Cty.*, 952 F.3d 552, 559 (5th Cir. 2017) (emphasis in original).

## B. The originally enacted text of Section 1983 precludes the defense of qualified immunity.

At the outset, Valadez challenges the applicability of the officers' qualified immunity defense in this case. Absolute immunities like qualified immunity were prohibited by the original enacted text of Section 1983, and it is the text of the originally enacted statute that governs the analysis of this issue. As such, the Individual Defendants cannot assert qualified immunity as a defense here.

This Court has recognized that "Section 1983 as originally enacted contained a 'Notwithstanding Clause' that appears to abrogate common-law immunities." *Hankins v. Wheeler*, 109 F.4th 839, 845 (5th Cir. 2024) (citing *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023) (Willett, J., concurring), *cert. denied* 144 S. Ct. 193 (2023)); *see also* Alexander Reinert, *Qualified Immunity's Flawed Foundation*, 111 Calif. L. Rev. 201, 207–08 (2023). Specifically, the language of Section 1983 as original passed by Congress stated—

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall, ***any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding,*** be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

*Id*. at 235 (emphasis added).

Although the italicized language was intended to abrogate common law immunities and provide broad relief, "the Reviser of Federal Statues made an unauthorized alteration to that language, which was compounded when the various revised statutes were later published in the first United States Code and has never been corrected." *Hankins*, 109 F.4th at 845 (citation modified). As such, the codified version of § 1983 that the U.S. Supreme Court and the lower federal courts have relied on in applying the doctrine of qualified immunity is not the version of § 1983 that Congress actually enacted.

But the originally enacted "unsubtle and categorical" language § 1983 "explicitly displaces common-law defenses," meaning that qualified immunity cannot form a defense to a § 1983 cause of action as that law was actually enacted,

since qualified immunity is "not just *a*textual [76] but *counter*textual" as "it brazenly *contradicts*" this text. *See Rogers*, 63 F.4th at 980 (Willett, J., concurring) (emphasis in original).

That said, the panel in *Hankins* held that "[w]hatever it merits, the argument is foreclosed because only the Supreme Court can definitively grapple with § 1983's enacted text and decide whether it means what it says—and what, if anything, that means for § 1983 immunity jurisprudence[.]" *Hankins*, 109 F.4th at 845 (citing *Rogers*, 63 F.4th at 980 (Willett, J., concurring)); *see also Green v. Thomas*, 129 F.4th 877, 890 (5th Cir. 2025) (panel "readily acknowledge[d] the legal, social, and practical defects of the judicially contrived qualified-immunity doctrine" but held that the this Court was not "permitted to overturn the Supreme Court's" § 1983 precedent "given our role as 'middle-management circuit judges[']").

Valadez respectfully disagrees with this assessment. This Court can and should recognize the will of Congress by applying the text that Congress actually enacted. It is the originally enacted session laws, not the recodification of those

---

76 Even under the codified version of § 1983, the "clearly established" prong of qualified immunity is an atextual gloss that does not find support in the text of the statute or at common law. *See Ziglar v. Abbasi*, 582 U.S. 120, 159 (2017) (Thomas, J., concurring); *Horvath v. City of Leander*, 946 F.3d 787, 795, 800-01 (5th Cir. 2020) (Ho, J., concurring) (opining "there is no textualist or originalist basis to support a 'clearly established' requirement in § 1983 cases"). Valadez further objects that the Individual Defendants cannot raise a "clearly established" challenge under qualified immunity because there is no textual basis or common law basis contemporary to § 1983's passage allowing the Individual Defendants to assert immunity on that basis.

session laws in the United States Code, that constitute the "Laws of the United States." *See* Tobias A. Dorsey, *Some Reflections on Not Reading the Statutes*, 10 GREEN BAG 2d 283, 284 (2007). "The Code is only 'prima facie' evidence of the law, while the Statutes at Large is 'legal' evidence, and 'the very meaning of "prima facie" is that the Code cannot prevail over the Statutes at Large when the two are inconsistent.'" *Id.* at 286-87 (citing 1 U.S.C. § 204(a); 1 U.S.C. § 112; *Stephan v. United States*, 319 U.S. 423, 426 (1943) (per curiam)).[77]

The reviser's omission of the Notwithstanding Clause in the codification of § 1983 did not change the fact that § 1983's aim was to abrogate immunity, or that it is the substance of the originally enacted statute that controls over the text of the codification when it comes to interpreting § 1983.[78] Congress' codification of existing

---

[77] *See also In re Gold King Mine Release in San Juan Cnty., Colorado, on Aug. 5, 2015*, 669 F. Supp. 3d 1146, 1154-56 (D.N.M. 2023) (applying original statutory law rather than codified law in tribal dispute); Charles S. Zinn, *Revision of the United States Code*, 51 LAW LIBR. J. 388, 389-90 (1958) (remarks of Congressional Reviser that United States Code "is only prima facie evidence of the law" and "[i]f you go into court and cite a section of the *United States Code*, your adversary may bring in a dozen Statutes at Large to show that what is in the *Code* is not an accurate statement. As a result, he may prevail because the *Statutes at Large* are legal evidence of the law, whereas the *Code* is only prima facie evidence").

[78] *See* Patrick Jaicomo & Daniel Nelson, *Section 1983 (Still) Displaces Qualified Immunity (Feb. 3, 2025)*, 49 HARV. J.L. & PUB. POL'Y (forthcoming in 2026) at 31-33, *available online at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5124275 (positing that the Notwithstanding Clause was omitted by the revisers for non-substantive concision reasons based on belief that courts would intuit repeal of all inconsistent laws based on passage of current law, with citation made to the original session laws in the codified version as an interpretational failsafe "so that courts could look to the original act to ascertain legislative intent in cases of doubt") (internal quotations marks omitted).

statutes into one compendium was not intended to be a substantive change, and it was always the case that the originally enacted statute controlled in the event that a dispute arose regarding codification, which is why the Code cites the originally enacted statutes.[79]

Valadez argues that neither vertical nor horizontal stare decisis concerns should block this Court from granting Valadez relief because neither the United States Supreme Court nor this Court have formally interpreted § 1983 as originally enacted, meaning the interpretation of the originally enacted text of § 1983 vis-à-vis qualified immunity technically remains an issue of first impression. The discovery of this statutory codification error changing the settled understanding of § 1983 is analogous to an intervening change in law that would require reinterpretation of a statute and thus frees the Court from previous constructions of incomplete statutory language. *Cf. In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (rule of orderliness does not preclude consideration of argument based on "an intervening change in the law, such as by a statutory amendment").

The Court should find that qualified immunity cannot be raised a defense under the plain language of the original enacted text of § 1983, and the Individual Defendant's qualified immunity defenses should be denied in their entirety.

---

[79] *Id.*

### C. ISSUE ONE: The district court erred by dismissing Valadez's Fourteenth Amendment state-created danger doctrine claim (Count I) under Rule 12(b)(6).

Even if the two-prong qualified immunity analysis still applies here,[80] the district court erred by granting the Rule 12(b)(6) motion as to Valadez's constitutional claims.

Start with Valadez's constitutional claim under the state-created danger doctrine. The Due Process Clause of the Fourteenth Amended provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The Due Process Clause . . . does not, as a general matter, require the government to protect its citizens from the acts of private actors." *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). However, the state-created danger doctrine is an exception to this rule "under which a state actor who knowingly places a citizen in danger may be accountable for the foreseeable injuries that result." *Fisher*, 73 F.4th at 372.

---

[80] A plaintiff seeking to overcome qualified immunity must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Converse v. City of Kemah, Tex.*, 961 F.3d 771, 774 (5th Cir. 2020). "While the plaintiff bears the burden of negating qualified immunity after the defendant asserts the defense," the district court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Id.* (citation modified).

Valadez's allegations fall within the elements of the state-created danger doctrine articulated by this Court, and the state-created danger doctrine is clearly established law based both on the robust consensus of other circuits and on scholarship and caselaw showing that the Framers of the Fourteenth Amendment likely understood that state actors would be liable for constitutional right violations caused by actions that put an injured party in danger.

1.  *Valadez's pleadings meet the elements for state-created danger recognized in Fisher v. Moore.*

First, the facts alleged in this case meets the elements of the state-created danger doctrine as articulated by this Court.

The state-created danger doctrine is the Schrodinger's cat of Fifth Circuit jurisprudence—ostensibly dead and alive at the same time.[81] The Court has broadcast mixed signals regarding the state-created danger doctrine, stating at some points that the doctrine has not been formally recognized[82] but also stating that the

---

[81] *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537-38 (5th Cir. 2003) (reversing Rule 12(b)(6) dismissal and remanding where plaintiff alleged state-created danger claim arising from collapse of Texas A&M bonfire); *Breen v. Tex. A&M Univ.*, 485 F.3d 325, 335 (5th Cir.), *op. withdrawn in part on reh'g*, 494 F.3d 516 (5th Cir. 2007) (portion of panel decision recognizing that previous panel may have implicitly recognized state-created danger doctrine in *Scanlan* withdrawn and deleted on rehearing).

[82] *See Doe ex rel. Magee*, 675 F.3d at 865.

Court is not foreclosing the possibility that the doctrine *could* apply.[83] This Court has even gone so far as to articulate elements to the doctrine and applied given sets of fact against those legal elements in deciding appeals.[84]

This Court has recognized that the state-created danger theory would require "a plaintiff [to] show [1] the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff." *Fisher*, 73 F.4th at 372. The Court has also stated that the defendant "must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Id.*

The first element was adequately pleaded. By initiating a vehicle chase, Sgt. Juarez-Aguilera used his authority to create a dangerous condition on the roadways, satisfying element one of the inquiry. *See Velasquez v. City of Wilkes-Barre*, No. 3:22CV125, 2024 WL 1333378, at *5 (M.D. Pa. Mar. 28, 2024) (finding plaintiff has adequately pled a cause of action against police defendants under the state-created danger theory where police initiated high-speed chase in densely-packed residential neighborhood).

---

[83] *Fisher*, 73 F.4th at 372 (noting that while the Fifth Circuit has not formally adopted the state-created danger doctrine "we have not categorically *ruled out* the doctrine either; we have merely declined to adopt this particular theory of constitutional liability").

[84] *See Fisher*, 73 F.4th at 372; *Doe ex rel. Magee*, 675 F.3d at 865 (articulating elements and finding allegations did not line up with elements); *Johnson*, 38 F.3d 198, 201 (5th Cir. 1994) (same).

As for element two, Valadez alleged sufficient facts to allow a reasonable juror to conclude that Sgt. Juarez-Aguilera acted with deliberate indifference. *Fisher*, 73 F.4th at 372. "To act with deliberate indifference, a state actor must 'know[ ] of and disregard[ ] an excessive risk to [the victim's] health or safety.'" *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013). The Third Circuit has held that when a police officer must take actions such as initiating a vehicle pursuit "within a time frame that allows an officer to engage in 'hurried deliberation'" and a plaintiff has pleaded that the officer's actions "reveal a conscious disregard of a great risk of serious harm[,]" the pleading standard for the state-created danger doctrine has been met and a Rule 12(b)(6) motion should be denied. *See Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 718 (3d Cir. 2018).

Valadez's allegations in this case are similar to those found to be sufficient in a state-created danger case by the U.S. District Court for the Middle District of Pennsylvania. In *Velasquez v. City of Wilkes-Barre*, a plaintiff alleged she had been severely injured when a car being chased by City of Wilkes-Barre police officers crashed into her as she was crossing the street. *See Velasquez*, 2024 WL 1333378, at *1.

The plaintiff alleged that at the time: (1) police officers "pursued [the car] at a high rate of speed in a vehicle owned by Defendant City of Wilkes-Barre,"(2) the

officers "initiated the high-speed chase in the Heights section of Wilkes-Barre and continued it for approximately a mile until Defendant Jones' automobile collided with plaintiff," (3) "[t]he pursuit involved vehicle speeds of up to 100 miles per hour in a neighborhood with a speed limit of 25 miles per hour," and (4) "[t]he pursuit lasted for at least a mile in a densely populated residential area of Wilkes-Barre, on narrow city streets, and a two-way undivided roadway." *Id.*

The *Velasquez* court denied the Rule 12(b)(6) motion, finding that the plaintiff had stated a claim under the state-created danger doctrine, as the officer's decision to initiate a high-speed pursuit over an observed traffic violation and then continuing that high-speed pursuit into a densely-packed residential area over the course of about a mile met the requisite mental state standard. *Id.* at *3-*4; *see also Sauers*, 905 F.3d at 716-17 (officer's conduct in chasing vehicle "at speeds over 100 miles-per-hour on a two way, undivided road to catch someone who had committed a minor traffic infraction" rather than radioing officers in the next borough to stop vehicle when suspect crossed into their jurisdiction was sufficient to support state-created danger claim).

Here, Valadez alleged that Sgt. Juarez-Aguilera decided to initiate his pursuit of the gray GMC truck at 3:20 a.m. even though at the time he initiated the pursuit

the vehicle did not present a clear and immediate threat to the safety of others.[85] Sgt. Juarez-Aguilera chose to initiate a pursuit inside the small jurisdiction of Jacinto City rather than advise fellow officers in the neighboring municipality to which the suspect was headed to surveil or stop the suspect vehicle. *Sauers*, 905 F.3d at 716-17 (considering officer's decision to pursue rather than advise neighboring borough of suspect's movements and to anticipate jurisdiction crossover as factor supporting creating of state danger).

Sgt. Juarez-Aguilera then continued the pursuit off the City's main drag at high speeds into a heavily-populated residential neighborhood with vehicles lining the streets, a narrow undivided two-lane road, and multiple speed humps with signs setting the speed limit at 10 miles an hour.[86] *Id.*; *Velasquez*, 2024 WL 1333378, *3-*4 (high-speed pursuit into densely-packed neighborhood along undivided two-lane road factor to consider in creation of danger). Sgt. Juarez-Aguilera continued the pursuit out of the neighborhood,[87] through stops signs, across railroad tracks,[88] and back onto the City's main drag for a significant distance,[89] where as the result of a pursuit the suspect vehicle collided with Velasquez's vehicle at an intersection where

---

[85] ROA.9 ¶ 18.
[86] ROA.10 ¶ 21, ROA.11-15 ¶ 23-33 and Illustrations D through M.
[87] ROA.14-15 ¶¶ 31-32.
[88] ROA.15 ¶ 33.
[89] ROA.16 ¶¶ 34-35.

Velasquez had the right of way[90] and where Velasquez was otherwise operating her vehicle in a safe manner.[91]

Velasquez realleged all these facts in Count I[92] and specifically alleged that Sgt. Juarez-Aguilera acted under his authority and his "use of high speeds to attempt to affect the stop and/or arrest of the suspect vehicle"[93] "exhibited recklessness"[94] both as to Valadez and the general public, that his decision to pursue the vehicle was the but for cause of Valadez's injuries,[95] and that Sgt. Juarez-Aguilera did not learn that the vehicle was actually stolen until after the collision.[96]

Under the short and plain statement standard set out in FED. R. CIV. P. 8, Valadez has adequately pleaded a claim under the state-created danger doctrine elements identified in *Fisher*. *Accord Sauers*, 905 F.3d at 716-17; *Velasquez*, 2024 WL 1333378, *3-*4. The district court's dismissal order could not have rested on this ground, and should be reversed. In the alternative, should this Court find that this claim was not adequately pleaded, Valadez respectfully requests the Court grant her leave to replead to correct any identified defects, as her claims are not futile. *See*

---

[90] ROA.16-17 ¶¶ 36-37.
[91] ROA.19 ¶ 45.
[92] ROA.20 ¶ 46.
[93] ROA.20 ¶ 53.
[94] ROA.20 ¶ 46.
[95] ROA.21 ¶¶ 55, 58.
[96] ROA.18 ¶ 43, ROA.21 ¶ 57.

*Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (en banc) (on interlocutory appeal, reversing denial of motion to dismiss Section 1983 claim, but remanding "to allow plaintiff to amend and for further proceedings consistent with this opinion"); Fed. R. Civ. P. 15(a)(2) (" . . . a party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires.").

### 2. *The state-created danger doctrine is clearly established.*

In light of Valadez having adequately pleaded a state-created danger doctrine claim, qualified immunity should not shield Defendants here because the state-created danger doctrine is clearly established law.

a. A robust consensus of authority from other circuits shows the state-created danger doctrine is clearly established.

Valadez acknowledges that the *Fisher* court recently dismissed a state-created danger doctrine claim on qualified immunity grounds by finding that the right had not been clearly established in this circuit. *Fisher*, 73 F.4th at 372. However, the United States Supreme Court has directed the circuit courts to assess whether there is a "robust consensus" of authority from other circuits in deciding whether a right is clearly established. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see also Irish v. Fowler*, 979 F.3d 65, 75 (1st Cir. 2020) (finding concurrence of three or four sister circuits was sufficient to show law was "clearly established" for purposes of qualified immunity).

This robust consensus test permits this Court to find that the state-created danger doctrine is clearly established law *even where* prior intra-circuit decisions have never explicitly adopted the doctrine. The First Circuit recently did so in *Irish*. *See Irish*, 979 F.3d at 75 (recognizing the state-created danger doctrine for the first time in the First Circuit and denying qualified immunity even though doctrine had not been explicitly recognized previously in First Circuit because the "widespread acceptance of the state-created danger theory . . . was sufficient to clearly establish that a state official may incur a duty to protect a plaintiff where the official creates or exacerbates a danger to the plaintiff"). This Court should do the same here.

In *Fisher*, Judge Willett recognized that the Fifth Circuit is an outlier circuit when it comes to the state-created danger doctrine, and that a majority of sister circuits—specifically the Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits—do explicitly recognize the doctrine in one form or another. *See Fisher*, 73 F.4th at 372-73 & n.19.[97]

---

[97] The opinions identified by Judge Willett in *Fisher* as establishing state-created danger doctrine in other circuits are *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001); *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 428 (2d Cir. 2009); *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996); *Doe v. Rosa*, 795 F.3d 429, 438–39 (4th Cir. 2015); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066–67 (6th Cir. 1998); *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007); *Carlton v. Cleburne Cnty.*, 93 F.3d 505, 508 (8th Cir. 1996); *Wood v. Ostrander*, 879 F.2d 583, 589–90 (9th Cir. 1989); *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995).

In fact, the Fifth Circuit is more than just a majority outlier. Valadez adds that the First and the Eleventh Circuit have also both recognized the state-created danger doctrine in some form. *See Irish*, 979 F.3d at 75 (First Circuit); *Mitchell v. Duval Cnty. Sch. Bd.*, 107 F.3d 837, 838 (11th Cir. 1997) (holding "state has a duty to protect an individual from third parties when the state's actions place an individual in 'special danger'"). This means that apart from the Federal Circuit, which does not have jurisdiction that would generally encompass civil rights claims, the Fifth Circuit remains possibly the *only* circuit court in the United States that has not decided one way or another about the state-created danger doctrine's existence. *Fisher*, 73 F.4th at 376 (Higginson, J., dissenting from denial of reh'g en banc). The concurrence of virtually every other federal circuit court that the state-created danger doctrine exists should be sufficient to establish this doctrine is clearly established under *al-Kidd*. *See Irish*, 979 F.3d at 75.

> b. The state-created danger doctrine comports with how the Fourteenth Amendment's reach was historically understood.

The *Fisher* court also declined to address the state-created danger doctrine question because the appellant in that case did not brief issue of whether state-created danger doctrine comported with historical understanding. *See Fisher*, 73 F.4th at 374. However, the state-created danger doctrine is consistent with the Framers' intent in enacting the Fourteenth Amendment to vindicate the rights of all

citizens following the so-called Second Founding. *See* David Pruessner, *The Forgotten Foundation of State-Created Danger Claims*, 20 Rᴇᴠ. Lɪᴛɪɢ. 357, 375 (2001).[98]

Indeed, although the doctrine is often attributed to language in the U.S. Supreme Court's decision in *DeShaney*, as the Ninth Circuit has correctly pointed out, the Seventh and Eighth Circuits both recognized the doctrine existed prior to *DeShaney*, and "[t]he oft-cited language of *DeShaney* . . . is thus more reasonably understood as an acknowledgment and preservation of the doctrine, rather than its source." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006).

The state-created danger doctrine springing from the Fourteenth Amendment is also consistent with Congress' enactment of Section 1983 shortly after the Fourteenth Amendment's enactment. "Early congressional enactments provide 'contemporaneous and weighty evidence' of the Constitution's meaning" and such "contemporaneous legislative exposition of the Constitution acquiesced in for a long term of years fixes the construction to be given its provisions." *Printz v. U.S.*, 521 U.S. 898, 905 (1997) (citation modified). As the New Jersey Court of Appeals has recognized, "the state-created danger doctrine constitutes a proper interpretation of the Due Process Clause" particularly when the Fourteenth Amendment, which was enacted in 1868, is viewed in light of the contemporary enactment of § 1983 in 1871.

---

[98] Hereinafter "Pruessner, *The Forgotten Foundation of the State-Created Danger Doctrine*."

*See Gonzales v. City of Camden*, 357 N.J. Super. 339, 347, 815 A.2d 489, 493 (N.J. App. Div. 2003) (citing Pruessner, *The Forgotten Foundation of State-Created Danger Claims*, 20 Rev. Litig. at 375).

Congress' enactment of § 1983 as part of the Ku Klux Klan Act shortly after the Fourteenth Amendment's ratification is instructive on the question of whether the Fourteenth Amendment's Framers intended to encompass a state-created danger doctrine. *Printz*, 521 U.S. at 905. As Professor David Pruessner has pointed out, the language of Section 1983 itself contemplates broad upstream liability for individuals acting under color of law whose actions trigger a causal chain of events leading to constitutional injury, providing that "Every person who, under color of [law] . . . subjects, or *causes to be subjected*, any citizen . . to the deprivation of any rights . . secured by the Constitutional and laws, *shall be liable to the party injured . . .* " *See* Pruessner, *The Forgotten Foundation of State-Created Danger Claims*, 20 Rev. Litig. at 375 (citing 42 U.S.C. § 1983).

This broad language includes affirmative state actions that cause a plaintiff to suffer injury at the hands of a third party's criminal act. *Id.* at 376 (§ 1983 enacted as part of Ku Klux Klan Act which was "aimed at imposing liability on those people, such as local officials, who subjected people to constitutional deprivations via private misconduct, i.e. criminal acts of the Klan" but was written "broadly to include . . .

all activities done under color of state law by which people are 'subjected' to deprivations of constitutional rights to life and liberty"). Indeed, the U.S. Supreme Court in *Monell* recognized this concept civilly, holding that as written, Section 1983's broad language "specifically provide[s] that A's tort became B's liability if B 'caused' A to subject another to a tort[.]" *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 692 (1978).

Recognition of the state-created danger doctrine is consistent with this Nation's history and tradition of protecting civil rights in the wake of the passage of the Fourteenth Amendment after the Second Founding. The right to be free from state-created danger is clearly established law. Qualified immunity should have been denied. This Court should reverse and reinstate Valadez's state-created danger doctrine claim.

### D. ISSUE TWO: The district court erred by dismissing Valadez's Fourteenth Amendment substantive due process claim (Count II) under Rule 12(b)(6).

The district court also erred by dismissing Valadez's substantive due process violation claim in Count II.

A substantive due process deprivation claim is distinct from a state-created danger claim. *See Est. of Soakai v. Abdelaziz*, 137 F.4th 969, 976, 981 (9th Cir. 2025) (describing state-created danger doctrine claim as "narrower" alternative claim to

County of Sacramento substantive due process claim). To establish substantive due process deprivation of life liability under the Fourteenth Amendment in high-speed police chase cases, the plaintiff must show that the defendant's conduct "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998); *see also Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 244 (5th Cir. 2025) (substantive due process claim requires actions that can be characterized as "arbitrary" or "conscience shocking"). Deliberate indifference or recklessness are not sufficient to state a claim under the due process clause; "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment[.]" *O'Neal v. Cazes*, 257 F. App'x 710, 713 (5th Cir. 2007).

"Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls." *Cnty. of Sacramento*, 523 U.S. 833 at 849. "Rules of due process are not, however, subject to mechanical application in unfamiliar territory. Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of

circumstances before any abuse of power is condemned as conscience shocking." *Id.* at 850.

Other circuits adjudicating police chase cases have articulated what conduct rises to the "shock the conscience" level. For instance, the First Circuit has held that "when an officer disregards police procedure, it bolsters the plaintiff's argument both that an officer's conduct 'shocks the conscience' and that 'a reasonable officer in the officer's circumstances would have believed that his conduct violated the Constitution." *Irish,* 979 F.3d at 77. Applying the "shocks the conscience" standard in police chase bystander cases, the Third Circuit has held that "the level of culpability required 'to shock the contemporary conscience' falls along a spectrum dictated by the circumstances of each case." *Sauers*, 905 F.3d at 717. Where "actions are taken within a time frame that allows an officer to engaged in 'hurried deliberation' . . . [and] those actions reveal a conscious disregard of a great risk of serious harm, they will be sufficient to shock the conscience." *Id.* (citation modified).

This Court should adopt the Third Circuit's graduated shocks-the-conscience test from *Sauers* in the context of adjudicating police chase cases under the substantive due process clause, distinguishing between decisions (1) made in a "hyperpressurized environment" (requiring "an intent to harm"); (2) made in a time frame that allows for "hurried deliberation" (requiring "conscious disregard of a

great risk of serious harm") and (3) actions taken with "unhurried judgments with time for careful deliberation. *Id.* (citing *Cnty. of Sacramento*, 523 U.S. 833 at 849-50). The *Sauers* test is consistent with the U.S. Supreme Court's admonition that the shocks the conscience test is not an impossible "mechanical" test to meet, but rather one in which matters more than negligence but less than intentional conduct require an analysis of circumstances. *Cnty. of Sacramento*, 523 U.S. 833 at 849-50.

As stated above in the state-created danger section of this brief, under the graduated shocks the conscience standard articulated in *Sauers*, Sgt. Juarez-Aguilera's actions in initiating a high-speed chase of a vehicle possibly connected to a crime being driven by juveniles,[99] chasing that truck at high-speeds through a neighborhood with a 10-mile-an-hour speed limit along an undivided two lane road at 3 a.m., and then pursuing the vehicle until it crashed rather than allowing a neighboring jurisdiction to surveil the vehicle or initiate a stop meets the conscience-shocking standard under the circumstances. *Sauers*, 905 F.3d at 716-17; *Velasquez*, 2024 WL 1333378, *3-*4; *Irish*, 979 F.3d at 77 (disregard of police policies and procedures weighs as factor in favor of conscience-shocking finding).

---

[99] The Jacinto Police Department's pursuit policy states that a pursuit shall be terminated if "[t]he pursuing officer knows, or is reasonably certain, that the fleeing vehicle is operated by a juvenile and/or the offenses constitutes a misdemeanor or a non-serious felony for which deadly force would not be used." ROA.26 ¶ 93.

Valadez adequately pleaded a substantive due process deprivation claim. The right to be free from deprivation of substantive due process is clearly established. *Velasquez*, 2024 WL 1333378, *3-*4. The district court's dismissal order could not have rested on this ground, and should be reversed. In the alternative, should this Court find that this claim was not adequately pleaded, Valadez respectfully requests the Court grant her leave to replead, as this claim is not futile. *Schultea*, 47 F.3d at 1434; FED. R. CIV. P. 15(a)(2).

### E. ISSUE THREE: The district court erred by dismissing Valadez's *Monell* claims for injury-from-policy (Count III) and failure to train/supervise (Count IV) under Rule 12(b)(6).

The district court further erred by dismissing Valadez's *Monell*-based claims in Count III and Count IV.

#### 1. *Injury from policy claim*

A municipal entity may be held liable under 42 U.S.C. § 1983 if "an action pursuant to official municipal policy . . caused a constitutional tort." *Haddock v. Tarrant Cnty., Tex.*, 852 F. App'x 826, 833 (5th Cir. 2021) (quoting *Monell*, 436 U.S. at 691). To state a *Monell* claim for municipal liability under § 1983, the plaintiff must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). A policy can either be formally

adopted or it can be an unofficial custom. *Aguirre v. City of San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021). "For a municipality to be liable based on its policy, a plaintiff must show either (1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights; or (2) 'that the policy was adopted or maintained by the municipality's policymakers with "deliberate indifference" as to its known or obvious consequences.'" *Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 949 (N.D. Tex. 2014).

Here, Valadez's allegations are sufficient to state an injury-from-policy claim under *Monell*:

**Existence of an official policy.** Valadez alleged that Policy No. 4.7, Pursuit of Fleeing Vehicles, was the relevant City policy.[100] The policy stated in relevant part—

V. Pursuit Termination

    A. The decision to abandon a pursuit may be the most intelligent course of action. Officers must continually question whether the seriousness of the crime justifies continuation of the pursuit. A pursuit shall be terminated under any of the following circumstances:

        1. If, in the opinion of the pursuing office or the Patrol Supervisor, there is a clear and unreasonable danger to the officer and/or other users of the roadway created by the pursuit that outweighs the necessity for immediate apprehension.

---

[100] ROA.23 ¶ 72, ROA.26 ¶ 93.

2. The suspect(s) identity has been established to the point that later apprehension can be accomplished.

3. The prevailing traffic, roadway, or environmental conditions indicate the futility of continued pursuit.

4. The pursued vehicle's location is no longer known.

5. The pursuing officer knows, or is reasonably certain, that the fleeing vehicle is operated by a juvenile and/or the offense constitutes a misdemeanor or a non-serious felony, for which deadly force would not be used.

6. When the pursuit does not comply with the conditions of Section (I) (A) of this policy.[101]

**Promulgation.** Valadez alleged that the City originally promulgated the policy on July 1, 1999, and revised it once on May 10, 2000.[102]

**Moving force.** Valadez alleged that "Chief Ayala and his command staff knew or should have known that leaving the decision to 'begin, responsibility for continuation, and method of pursuit rests primarily with the individual officer(s) involved' – without providing greater specificity about the circumstances under which a high-speed pursuit could be conducted – would invariably lead to situations like this, where a reckless pursuit is conducted over a minor traffic offense."[103]

---

[101] ROA.26 ¶ 93.
[102] ROA.23 ¶ 75.
[103] ROA.23 ¶ 77.

Valadez further alleged that "the nebulous modifiers in the policy – e.g. 'serious' felonies – and complete lack of reference to reasonable suspicion and whether it warrants engaging in the pursuit of a fleeing vehicle evidences the deliberate indifference in the promulgation and use of this policy."[104] Valadez also alleged deliberate indifference in that the allegedly deficient vehicle pursuit policy had remained unchanged since its inception in 1999.[105] Valadez concluded by alleging that the City and Chief Ayala promulgated and maintained the policy with deliberate indifference to the rights of Valadez and the general public, and that the policy was a moving force behind her injuries.[106]

* * *

Valadez adequately pleaded a *Monell* claim against the City. The district court's dismissal order could not have rested on this ground, and should be reversed. In the alternative, should this Court find that this claim was not adequately pleaded, Valadez respectfully requests the Court grant her leave to replead, as this claim is not futile. *Schultea*, 47 F.3d at 1434; FED. R. CIV. P. 15(a)(2).

  2. *Failure to train/supervise claim*

---

[104] ROA.23 ¶ 77.
[105] ROA.24 ¶ 84.
[106] ROA.23 ¶ 77.

The district court also erred by dismissing the failure to train/supervise claim against Chief Ayala. To succeed on a claim of failure to train or supervise, a plaintiff must demonstrate that: (1) the defendant failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003). The plaintiff must establish that the supervisor acted, or failed to act, with deliberate indifference to violations committed by their subordinates. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). These elements have been adequately pleaded.

**Failure to train.** Valadez alleged that "the police officers subject to Policy No. 4.7, Pursuit of Fleeing Vehicles, were not trained on whether they could engage in a pursuit without probable cause that a 'serious' felony has been or is in the process of being committed, nor whether the policy permits pursuits where the officer only has arguable reasonable suspicion"[107] and that the defendants "breached this [duty] by giving peace officers nearly complete autonomy on when and if they engaged in a vehicle pursuit, despite failing to provide enough specificity to ensure that peace

---

[107] ROA.24 ¶ 84.

officers only engaged in pursuit for truly serious offenses."[108] "Furthermore, the City of Jacinto City, TX and Defendant J.M. Ayala, individually, also failed to train and supervise its employees to the extent that it ensures its peace officers engage in vehicle pursuits only in circumstances where they have actual probable cause a serious felony offense has been committed, not merely arguable reasonable suspicion or a minor traffic offense."[109]

- **Causal connection.** Valadez alleged that the failure to train Jacinto City officers proximately caused Valadez's injuries.[110]

- **Deliberate indifference.** Valadez alleged that the Jacinto City Police Department's adoption of its policy was done with deliberate indifference to the rights of citizens on the road since the policy's inception.[111]

\* \* \*

Valadez adequately pleaded a failure to train claim against the City and Chief Ayala. The district court's dismissal order could not have rested on this ground, and should be reversed. In the alternative, should this Court find that this claim was not adequately pleaded, Valadez respectfully requests the Court grant her leave to

---

[108] ROA.24-25 ¶ 86.
[109] ROA.24-25 ¶ 87.
[110] ROA.25 ¶ 88.
[111] ROA.24 ¶ 83.

replead, as this claim is not futile. *Schultea*, 47 F.3d at 1434; Fᴇᴅ. R. Cɪᴠ. P. 15(a)(2).

### F. ISSUE FOUR: The trial court erred by dismissing Valadez's Texas Tort Claims Act claim (Count V) under Rule 12(b)(6).

Finally, the district court also erred by dismissing Valadez's Texas Tort Claims Act cause of action as being inadequately pleaded. The district court's order should be reversed as to this claim.

In the portion of their motion to dismiss dealing with the TTCA claim, Defendants raised two objections: a procedural objection (lack of notice)[112] and a substantive objection (causation) to the sufficiency of Valadez's pleadings.[113] The district court granted dismissal based on the substantive objection only,[114] but neither of the City's objections have merit. This Court should reverse and remand the TTCA claim to the district court.

#### 1. *Valadez adequately pleaded actual notice.*

First, Defendants contended that Valadez did not adequately allege that the statutory prerequisites have been met because Valadez did not plead that she

---

[112] ROA.97-98.
[113] ROA.99-101.
[114] ROA.197.

presented the City with a timely notice of claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a).

However, "[t]he notice requirements provided or ratified and approved by Subsections (a) . . . do[es] not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c). "[T]he actual notice provision requires that a governmental unit has subjective awareness that its fault, as ultimately alleged by the claimant, produced or contributed to the claimed injuries." *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018). "A governmental unit has actual notice under the TTCA if it has subjective knowledge of (1) a death, injury, or property damage; (2) the governmental unit's fault that produced or contributed to the death, injury, or property damage; and (3) the identity of the parties involved." *Id.*

At the outset, Valadez notes that under Texas law, "whether a governmental unit has actual notice is a fact question when the evidence is disputed" and requires the introduction of factual evidence to resolve conclusively. *Id.* Thus, the City's pleadings-based attack through a Rule 12(b)(6) motion is improper and unavailing. Under Texas law, the City's subjective notice of its own involvement and potential liability should be resolved on evidence following a period of discovery. *Id.*

Nevertheless, Valadez did plead that Defendants had actual notice of the claim,[115] and this actual notice pleading dispenses with the presentment requirement. Furthermore, Valadez alleged more than simply the fact that a vehicle was being pursued. *Id.* at 778. Unlike in *Tenorio*, there is no allegation that Sgt. Juarez-Aguilera broke off the chase before the suspect crashed into the innocent third-party plaintiff. *Compare id.* at 774 (San Antonio police not subjectively aware because officer cut off chase after suspect drove motorcycle wrong way onto the freeway). Sgt. Juarez-Aguilera was close enough to witness the accident, as shown by the dashcam stills. Valadez also alleged that Houston police who arrived at the crash scene opened a criminal investigation into the case, the Harris County District Attorney accepted the case for prosecution, and Officer Juarez-Aguilera asked for personal updates from Valadez's doctor about the state of her condition after the crash.[116] These facts tend to corroborate the allegation that the City was subjectively aware of its own culpability.

Valadez sufficiently pleaded actual notice under Texas law. At this stage, absent the benefit of discovery into the subjective awareness of relevant city officials

---

[115] ROA.26 ¶ 95.
[116] ROA.18 ¶¶ 41-42.

and officers, these allegations are sufficient. The motion could not have been granted on this ground.

### 2. *Valadez's theory of bystander injury is cognizable under the TTCA's motor vehicle waiver.*

Second, the district court erred by finding that Valadez could not state a valid TTCA claim under the TTCA's motor vehicle exception because Valadez was not hit directly by a police car. Texas law does not require a police officer's car to directly hit the bystander or otherwise physically push a fleeing car into a bystander for the TTCA's motor vehicle exception to apply. A bystander can state a claim under the TTCA for injuries sustained by vehicles fleeing police pursuit even when the police care does not make physical contact with another car as well.

A Texas municipality is entitled to immunity from state tort lawsuits seeking monetary damages arising out of police protection activities unless immunity is waived by state law. *City of El Paso v. Cangialosi*, 632 S.W.3d 611, 619 (Tex.App.—El Paso 2020, no pet.). The Texas Legislature has provided a limited waiver of governmental immunity in the Texas Tort Claims Act (TTCA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021. The statute states, in relevant part—

A governmental unit in the state is liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021.

The TTCA waives sovereign immunity in "three areas when the statutory requirements are met: (1) use of publicly owned automobiles; (2) injuries arising out of a condition or use of tangible personal property; and (3) premises defects." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). Valadez alleged that Sgt. Juarez-Aguilera's pursuit of the suspect in his police vehicle led to her injuries. This was sufficient to bring her claim within the ambit of the motor vehicle exception. *Cangialosi*, 632 S.W.3d at 619.

In the district court, the City contended that Valadez had not adequately pleaded the motor vehicle exception because she did not plead that the police car itself hit her car.[117] Valadez did not need to plead that the police car collided with her

---

[117] ROA.100.

or the suspect to show her injury "arises from the operation or use of a motor-driven vehicle or motor-driven equipment" under Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A). Texas appellate authority supports this argument.

This Court reviews a district court's interpretation of state law de novo "and is bound to resolve the issue as the state's highest court would." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019). In applying and determining Texas law, this Court looks first to the decisions of the Texas Supreme Court, but if the Texas Supreme Court has not ruled on an issue, the Court "make[s] an *Erie* guess, predicting what the Texas Supreme Court would do if faced with the same facts." *Id.* (citation modified). Although Defendants cited to some federal cases interpreting the TTCA in the district court, this Court "typically treat[s] state intermediate courts' decisions as the strongest indicator of what a state supreme court would do, absent a compelling reason to believe that the state supreme court would reject the lower courts' reasoning." *Id.* (citation modified).

Here, the Texas Supreme Court has not directly addressed the question of whether a bystander injury caused by a vehicle being pursued by police is an injury that "arises from the operation or use of a motor-driven vehicle or motor-driven equipment" as that phrase is used in motor vehicle exception at Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A). *See City of San Antonio v. Maspero*, 640

S.W.3d 523, 525 (Tex. 2022) (specifically declining to "reach or express any opinion on the issue of whether the plaintiff's injuries arose from the officer's operation or use of a motor vehicle" in case where suspect vehicle being chased by police collided with innocent bystander). The various Texas intermediate courts of appeals are divided in their approaches to this question. *See Tex. Dep't of Pub. Safety v. Reyes*, No. 08-25-00048-CV, 2025 WL 2655982, at *3 (Tex.App.—El Paso Sept. 16, 2025, no pet.) (mem. op.) (recognizing split on question of causal connection between El Paso Court of Appeals precedent in *City of El Paso v. Cangialosi*,[118] which recognizes third-party collision without police contact as a valid motor vehicle theory, and other Texas intermediate courts of appeals which do not); *see also see Maspero v. City of San Antonio*, 628 S.W.3d 476, 482-83 (Tex.App.—San Antonio 2019), *rev'd on other grounds,* 640 S.W.3d 523, 525 (Tex. 2022) (finding that motor vehicle exception applied because police officer's use of motor vehicle was cause in fact of suspect crashing into bystander, crash was foreseeable under the facts, and the officer's use of the motor vehicle was not too attenuated from the injury).

Based on the state of Texas law, this Court must make an *Erie* guess about how the Texas Supreme Court would interpret this statute. In making its *Erie* guess, this

---

[118] *Cangialosi*, 632 S.W.3d at 615.

Court should adopt the approach set out by the El Paso Court of Appeals in *Cangialosi v. City of El Paso*.

In *Cangialosi*, a woman was killed and two other passengers were injured when a fleeing suspect being chased by an El Paso Police Department vehicle crashed into the back of victim's car. *Cangialosi*, 632 S.W.3d at 615. After discovery and factual development, the City filed a plea to the jurisdiction,[119] raising the same argument that Defendants raised here: the plaintiffs "cannot show a nexus between the police use of its vehicles and the accident" because "no police unit impacted Roacho's or Appellee's vehicles. The police never bumped, nudged, or redirected Roacho, and at most they followed him from a distance. . . . the police pursuit did not more than furnish the condition that allowed Roacho to cause the injury producing the collision." *Id*. at 623-24.

The *Cangialosi* court rejected that argument, along with a request "for a bright-line rule for police pursuit cases, such that if the officer's vehicle is not involved in the impact, and does not nudge, re-direct, or bump the fleeing suspect so as to contribute to the accident, immunity should bar the suit." *Id*. at 624.

---

[119] A plea to the jurisdiction is a Texas-specific procedural dismissal device that a government unit can use to raise challenges to a trial court's jurisdiction. *Cangialosi*, 632 S.W.3d at 619-20. The plea can be used to attack either jurisdiction as pleaded, or jurisdiction based on the existence of certain facts, in which case it is treated akin to a motion for summary judgment. *Id*.

The *Cangialosi* court, construing the words "operation," "use," and "arises from" in Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 101.021(1)(A), determined that "[w]hile that bright-line rule may have much to offer from the standpoint of the public fisc, or clarity in police pursuit tactics, no [Texas] court has clearly articulated it as such in police pursuit cases. . . . Instead, we are cognizant of the Texas Supreme Court's more recent counsel that '[w]hile the multiplicity of possible fact-patterns and the vagaries of litigation can create complexity, in general courts should strive to give simple words like "operation" and "use" a simple construction, rather than converting them into terms of art intelligible only to experts in the case law applying the Tort Claims Act.'" *Cangialosi*, 632 S.W.3d at 626 (citing *PHI, Inc. v. Tex. Juv. Just. Dept*, 593 S.W.3d 296 (Tex. 2019) (defining "use" and "operation" in motor vehicle exception case broadly to include damage from unoccupied vehicle that rolled into a helicopter, since damage arose from government worker's "operation" of vehicle which included failure to engage emergency brake immediately before exiting after operating vehicle).

The opinion in *Cangialosi* should control the Court's decision here. *Cangialosi* is tied to general statutory interpretation principles on how to construe the motor vehicle waiver as articulated in a Texas Supreme Court decision (*PHI, Inc.*). *Cangialosi* distinguishes and rejects the authority on which Defendants rely.

*Cangialosi*, 632 S.W.3d at 624-26. And while the Texas Supreme Court had the opportunity to specifically disavow similar logic relied upon by the San Antonio Court of Appeals in *Maspero*, the Texas Supreme Court overruled *Maspero* on other grounds while taking pains to make clear that it was withholding judgment on the San Antonio Court of Appeals' causation analysis for another day. *Maspero*, 640 S.W.3d at 525.

Under the logic of *Cangialosi*, Valadez has adequately pleaded a TTCA claim against the City with a nexus to the use of a motor vehicle that falls squarely within the motor vehicle exception of the TTCA, and she has refuted Defendants' argument that they retain immunity *per se* because their vehicle did not directly cause Valadez's injuries. The motion to dismiss should be denied as to Valadez's TTCA claim. In the alternative, should this Court find that this claim was not adequately pleaded, Valadez respectfully requests the Court grant her leave to replead, as this claim is not futile. *Schultea*, 47 F.3d at 1434; FED. R. CIV. P. 15(a)(2).

## CONCLUSION

Valadez adequately pleaded all of her claims. The district court erred by granting the Rule 12(b)(6) motion. This Court should reverse the district court's judgment and remand for further proceedings.

Respectfully submitted,


/s/ Matthew S. Manning

MATTHEW S. MANNING
*Webb, Cason & Manning, P.C.*
710 Mesquite Street
Corpus Christi, TX 78401
361-887-1031
Email: service@wcctxlaw.com


*Attorneys for Appellees*

/s/ Kirk Michael Cooper

KIRK MICHAEL COOPER
*Cooper Appeals, P.L.L.C.*
10420 Montwood Drive, Ste. N-405
El Paso, Texas 79935
Phone: (915) 289-8282
Email: kirk@cooperappeals.com


### CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, a true and correct copy of the foregoing brief was electronically transmitted to the Clerk for the U.S. Court of Appeals for the Fifth Circuit through the CM/ECF System, which will send a Notice of Electronic Filing and serve by electronic means to William S. Helfand and Adarsh Annamaneni, counsel for the Defendants-Appellees.


/s/   Kirk Cooper

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of FED. R. APP. P. 32(a)(7)(B) because this brief contains 11,939 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 Version 2210. The font is Equity, with a font size that is at least 14-point or larger for body text and at least 12-point or larger for footnote text.

/s/    Kirk Cooper